IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| STEPHEN K. POND, | ) |
|     Plaintiff, | ) Case No. 1:21-cv-00083 |
| v. | ) |
| UNITED STATES OF AMERICA, | ) |
|     Defendant. | ) |

**MEMORANDUM IN SUPPORT OF
UNITED STATES' MOTION TO DISMISS AMENDED COMPLAINT**

The United States moved to dismiss the original complaint on the grounds that Plaintiff Stephen Pond's claim for refund for 2013 was untimely. The deadline to file the claim for refund was October 2017. Although the complaint alleged the claim was sent by first class mail in July 2017, the Internal Revenue Service (the Service) informed Pond they had no record of receiving it. The United States explained in its motion to dismiss that under the Internal Revenue Code, a claim for refund is only considered filed when it is received by the Service, or on the day it was mailed, if it was sent by certified mail.

The amended complaint attempts to defeat the motion to dismiss by repeating that Pond's claim was only sent by first class mail, but now alleging it was "subsequently lost or destroyed by IRS agents." In other words, the Taxpayer now contends the claim for refund was actually received by the Service. As explained below, however, the new facts as alleged are not relevant. Under 26 U.S.C. § 7502(c) and 26 C.F.R. § 7502(c)(2) the

1

only relevant facts are whether the claim for refund was sent by certified mail. It was not. Hence the motion to dismiss the amended complaint should be granted.

As stated in the original motion to dismiss, Plaintiff Stephen K. Pond seeks a refund of income tax for 2013 based on what he contends were computational errors by the Service in a Notice of Computational Adjustments issued on April 26, 2017. Doc. No. 8, ¶ 1. Plaintiff's claim for the refund for 2013, however, was not timely because under 26 U.S.C. § 6230(c)(2)(A) he had to file it within six months from when the when the Notice of Computational Adjustments was issued, or by October 26, 2017. Doc. No. 8, ¶¶ 9–11; Doc. No. 8-1 at 2. For the reasons enumerated below, Pond's Amended Complaint does not allege facts which show that he filed the claim for refund by that date. Because has not met his burden to establish a waiver of sovereign immunity, the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

I. **Statement of Facts**

A. The Procedures Established by the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982 Apply to Pond's Administrative Claim for a Refund.

Pond seeks a refund of income tax for 2013, which he contends he overpaid as a result of an erroneous Notice of Computational Adjustments arising from an audit of Insect Shield, LLC's partnership tax return for the 2012 tax year. Doc. No. 8, ¶¶ 1 and 8.

The Service issued a Notice of Computational Adjustment to Pond on April 26, 2017. Doc. No. 8-1.[1]  Some background on partnership audits may be helpful here.

Before 1982, determinations involving the income, loss, deductions, and/or credits of a partnership were made for each individual partner on the partner's individual income tax return.  *See, e.g. Ackerman v. Comm'r*, 72 T.C.M. (CCH) 81, 1996 WL 385868 at *2 (T.C. 1996).  In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, changing this procedure to make such determinations at the *partnership* level rather than the individual level.  *Id.*; Tax Equity and Fiscal Responsibility Act (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. 324, 648.  TEFRA included several provisions in the Internal Revenue Code applicable to partnerships, including 26 U.S.C. §§ 6221–6233.  *Id.*  Relevant here, 26 U.S.C. § 6230(c)(2)(A) permits a partner to file a claim for a refund if it disputes the computational adjustment on a partner's tax return arising from the audit.  But the provision specifies that a claim for refund be filed within 6 months after the mailing of the Notice of Computational Adjustment.

The procedures enacted by TEFRA, including 26 U.S.C. § 6230, have now been repealed and replaced by the Bipartisan Budget Act of 2015.  Pub. L. No. 114-74, § 1101(a).  Still, the new provisions do not apply to partnership tax years before November 2, 2015.  *Id.* § 1101(g) (the amendments made by the Bipartisan Budget Act applied to

---

[1] A court's evaluation of a motion to dismiss is generally limited to the complaint itself. *Goines v. Valley Cmty. Serv. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).  Even so, the court can also consider documents attached to the complaint as exhibits.  *Id.* at 166.

3

returns filed for partnership taxable years beginning after December 31, 2017, however, partnerships could elect for the amendments to apply to returns filed for the partnership taxable years beginning after November 2, 2015 and before January 1, 2018). Pond's request for a refund relates to the 2013 tax year, and thus the procedures under TEFRA, including 26 U.S.C. § 6230(c)(2)(A), control his request. Doc. No. 8, ¶¶ 9–15. The Amended Complaint acknowledges that TEFRA remained in effect until January 2018. *Id*., ¶¶ 25 and 34.

B. Factual Background

The Amended Complaint states Pond is an investor in Insect Shield, LLC. Doc. No. 8, ¶ 7. The Service audited Insect Shield's partnership return for 2012. *Id.*, ¶ 8. On April 26, 2017, the Service issued a Notice of Computational Adjustment to Pond, which he contends erroneously increased his 2012 income tax liability by $29,228, which he subsequently paid. *Id.*, ¶ 13. Pond also contends the correct adjustment to 2012 would have caused an overstatement of his 2013 tax liability in the amount of $145,894. *Id.*, ¶¶ 9–11; Doc. No. 8-1. Pursuant to 26 U.S.C. § 6230(c)(2)(A), Pond had six months from this date, or until October 26, 2017, by which to file a claim for a refund for 2012 and 2013. *See also,* Doc. No. 8-1 at 2.

Pond asserts he prepared and signed amended income tax returns for the tax years 2012 and 2013 on July 17, 2017. Doc. No. 8, ¶¶ 15 and 19; Doc. No. 8-2. He also claims he prepared a Form 843 Claim for Refund and Request for Abatement for the 2012 tax year. Doc. No. 8, ¶ 24; Doc. No. 8-3. The following day, the amended returns were allegedly placed in one envelope addressed to Service office in Holtsville, New York,

4

while the Form 843 was placed in another, separate envelope addressed to the Service office in Covington, Kentucky. Doc. No. 8, ¶¶ 20–21. Pond admits he did not mail the amended returns or the Form 843 personally: instead he claims he sent them to his accountant, Michael Myrick, for forwarding to the Service, and that his accountant sent them to the Internal Revenue Service by first class mail. Doc. No. 8, ¶¶ 19–21.

On September 14, 2017, Pond claims he received a letter from the Service, acknowledging receipt of the Form 843 sent to the Covington, Kentucky address on July 24, 2017. Doc. No. 8, ¶ 26; Doc. No. 8-4. This letter informed Pond the Service had not received his amended tax return for 2012. *Id*. While the letter did not mention the amended tax return for 2013,[2] Pond understood the amended returns for both 2012 and 2013 were submitted to the Holtsville, New York address in the same envelope. Doc. No. 8, ¶¶ 20–21. Even though Pond admits he knew the Service did not receive his 2012 amended return sent to Holtsville, New York, he inexplicably alleges that he assumed the Service had received the 2013 amended return, despite his understanding they were both mailed in the same envelope. *Id.*, ¶¶ 20–27. According to his Amended Complaint, Pond resubmitted his 2012 amended return on October 3, 2017, before the statutory deadline of October 26, 2017, but does not allege that he resubmitted his 2013 amended return prior October 26, 2017. *Id.*, ¶¶ 27–29. Instead, after confirming the Service never received his

---

[2] The Service contacted Pond because they received the Form 843 for the 2012 tax year. Doc. No. 8-4. Pond does not allege that he filed a similar Form 843 for the 2013 tax year. Doc. No. 8. Presumably, without a Form 843 for 2013, at the time of the correspondence, the Service had no way of knowing that Pond had also attempted submission of an amended tax return for 2013.

5

amended tax return for 2013, Pond alleges he submitted a duplicate copy of the amended return on February 1, 2019, by certified mail, well after the deadline for filing such a claim had lapsed. *Id.*, ¶ 33.

Pond amended his complaint to include allegations that, upon his information and belief, the envelope containing his amended returns was postmarked on July 18, 2017, and both returns were received by the Service. Doc. No. 8, ¶¶ 21–22. However, his remaining statements, and attachments, confirm that the amended returns were not received by the Service. *Id.,* ¶ 26; Doc. No. 8-4. Therefore, Pond's Amended Complaint fails to include sufficient facts to allege that the 2013 amended return was either sent by certified mail or that it was delivered to the Service. Doc. No. 8; Doc. No. 8-4; Doc. No. 8-8 at 33–34.

## II. <u>Question Presented:</u>

Whether Pond's Amended Complaint alleges facts which, if true, demonstrate that he filed a timely claim for a refund for 2013 and thus establishes subject matter jurisdiction in this case.

## III. <u>Pond's Amended Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(B)(1).</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See, e.g.*, *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 453 (4th Cir. 2012). The plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If a court

6

Case 1:21-cv-00083-LCB-LPA   Document 11   Filed 04/29/21   Page 6 of 20

determines that it lacks subject matter jurisdiction, it is "obliged to dismiss [the] case." *Id.* Defendants may challenge subject matter jurisdiction in two ways, either facially or factually. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a facial challenge, the defendant argues that the complaint fails to allege any facts on which subject matter jurisdiction can be based. *Id.* (citations omitted); *see also Gary v. James S. Farrin, P.C.*, Case No. 1:16CV542, 2020 WL 5763491 at *2 (M.D.N.C. Sept. 28, 2020). For a facial challenge to jurisdiction, all facts alleged in the complaint are taken as true. *Id.* Alternatively, the defendant can argue that the jurisdictional allegations of the complaint are false. *Id.* Here, even taking all the assertions in his Amended Complaint as true, Pond fails to allege any facts on which the Court could find subject matter jurisdiction.

A. <u>The Court lacks jurisdiction unless Pond can show the United States waived sovereign immunity.</u>

Pond's claim for a 2013 refund should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. The United States cannot be sued unless it has waived its sovereign immunity and the claim against the United States falls within the terms of the waiver. *United States v. Dalm*, 494 U.S. 596, 607 (1990); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). The waiver must be unequivocally expressed, and any ambiguity must be construed strictly in favor of immunity. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992). Thus, no party can maintain a suit against the United States unless the party sues in strict compliance with the terms of the statute under which sovereign immunity has been waived. *Soriano v. United States*, 352

7

U.S. 270, 276 (1957); *United States v. Sherwood*, 312 U.S. 584, 590 (1941). Further, "[i]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). When the United States has not waived sovereign immunity, the Court lacks subject matter jurisdiction and the case should be dismissed under Rule 12(b)(1). *Id.* at 650.

Under 28 U.S.C. § 1346(a)(1), the United States waives sovereign immunity, granting jurisdiction to district courts for civil actions against the United States for recovery of taxes which the plaintiff claims to have been erroneously collected. But before immunity is waived, the plaintiff must file a claim with the Service for a tax refund within the statutory period. 26 U.S.C. §§ 6511(a), 7422(a). Title 26, Section 7422(a) of the U.S. Code specifically maintains that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). As a result, a tax refund suit under § 7422(a) can be maintained only after the plaintiff has filed for a tax refund. *Id.*; *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government [but] before doing so, the taxpayer must comply with the tax refund scheme established in the Code."). Failure to exhaust these remedies results in a failure to

establish a waiver of sovereign immunity and a lack of subject matter jurisdiction. *Dalm*, 494 U.S. at 602.

The claim for a refund must also be "duly filed" with the Service, in accordance with the Internal Revenue Code, for a plaintiff to maintain an action against the United States. 26 U.S.C. § 7422(a); *Dalm*, 494 U.S. at 609–10. When a plaintiff has failed to comply with the statutory requirements for seeking a refund, the United States has not waived sovereign immunity and the Court lacks subject matter jurisdiction. *Id.* For a return to be "duly filed," the return must have been filed within the time limits imposed by the Internal Revenue Code. *Dalm*, 494 U.S. at 602.

B. <u>Pond did not file his 2013 amended tax return before the applicable deadline, and therefore, he cannot show that the United States has waived sovereign immunity.</u>

We must start with a discussion of when a tax return is considered "filed" with the Service. At first, the Service treated returns as "filed" only if and when they were physically delivered to the Service, and therefore, a return was filed on time only if the Service received it before the applicable deadline. *United States v. Lombardo*, 241 U.S. 73, 76 (1916). Such requirement is known as the "Physical Delivery Rule." Of course, this left taxpayers vulnerable to any delays caused by the postal service, leading courts to apply a common-law Mailbox Rule, which would allow a taxpayer to present evidence of proper mailing to rise to a rebuttable presumption that the document was physically delivered to the addressee in the usual time. *See, e.g., Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r of Internal Revenue*, 523 F.3d 140, 147 (3d Cir. 2008) (providing history of the Mailbox Rule); *Detroit Auto. Products Corp.*

9

v. *Comm'r of Internal Revenue*, 203 F.2d 785, 785–86 (6th Cir. 1953); *Arkansas Motor Coaches, Ltd. v. Comm'r of Internal Revenue*, 198 F.2d 189, 191 (8th Cir. 1953); *Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019) (providing history of the Mailbox Rule).

In 1954, Congress enacted 26 U.S.C. § 7502, providing statutory exceptions to the Physical Delivery Rule. The first exception of the statute provides that a return is considered timely filed if both the document is *actually delivered* to the Service and the document is postmarked before the applicable deadline. 26 U.S.C. § 7502(a)(1); *see also Hull v. United States*, 146 F.3d 235, 239 (4th Cir. 1998). But the use of the postmark under § 7502(a)(1) only applies if the documents are received by the Service. *Id.* The second exception of § 7502 suspends the requirement for actual delivery if the taxpayer chooses to use certified or registered mail: the registration serves as prima facie evidence of delivery and the date of the registration is deemed the "postmark." 26 U.S.C. § 7502(c)(1).

The statute is silent on whether the Courts can consider extrinsic evidence to prove delivery, and thus circuit courts split on whether § 7502 displaced the common-law Mailbox Rule. Some circuits held that § 7502 provided the only exceptions to the Physical Delivery Rule: a taxpayer must either have a registered mail receipt or the Service must actually receive the document with a postmark, both required to reflect a date prior to the applicable deadline. *See Deutsch v. Comm'r of Internal Revenue*, 599 F.2d 44, 46 (2d Cir. 1979); *Miller v. United States*, 784 F.2d 728, 730–31 (6th Cir. 1986). Other circuits found that § 7502 merely supplemented the common-law Mailbox Rule,

10

and permitted a taxpayer to introduce extrinsic evidence to show a rebuttable presumption that the document was mailed early enough to allow timely receipt by the Service in the regular course of United States Post Office business. *Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund*, 523 F.3d at 147 (3d Cir. 2008); *Est. of Wood v. Comm'r of Internal Revenue*, 909 F2d 1155, 1161 (8th Cir. 1990); *Sorrentino v. Internal Revenue Serv.*, 383 F.3d 1187, 1193 (10th Cir. 2004). While the Fourth Circuit did not consider the issue, this Court followed the Eighth Circuit in permitting extrinsic evidence. *Lee Brick & Tile Co., Inc. v. United States*, 132 F.R.D. 414, 420 (M.D.N.C. 1990).

Faced with differentiating treatment based on where a taxpayer lived, in 2011, the Treasury Department amended Treasury Regulation § 301.7502-1(e), interpreting § 7502 as creating the exclusive exception to the physical-delivery rule. 26 C.F.R. § 301-7502(e)(2)(i). The regulation clearly states, unless the taxpayer has direct proof of actual delivery of the document to the Service, the exceptions under § 7502 provide the exclusive means to prove delivery. *Id.* Thus, under the regulation, the taxpayer cannot use the common-law Mailbox Rule to demonstrate constructive delivery of documents to the Service. Pond's Amended Complaint fails to allege facts that, when taken as true, show that his 2013 amended return was filed on or before the applicable deadline of October 26, 2017, regardless of which test the Court applies to determine whether the return was "timely filed."

11

Case 1:21-cv-00083-LCB-LPA   Document 11   Filed 04/29/21   Page 11 of 20

> *i. Pond did not allege sufficient facts to show his amended tax return for 2013 was timely filed as determined by the Physical Delivery Rule.*

For a document to be timely filed under the Physical Delivery Rule, a taxpayer must show that the document was delivered to and received by the Service on or before the applicable deadline. *Hull v. United States*, 146 F.3d 235, 238–39 (4th Cir. 1998). The facts alleged by Pond reveal that the amended return was *not* delivered to or received by the Service on or before October 26, 2017.[3] Pond maintains that the amended tax returns for both 2012 and 2013 were submitted in a single envelope, together, on July 18, 2017. Doc. No. 8, ¶ 20. He also attached a letter from the Service, dated September 14, 2017, clearly stating that the Service did not receive his amended 2012 tax return. Doc. No. 8-4. Because he claims both returns were sent together and he claims the Service notified Pond that they did not receive at least one of them, the facts in Pond's Amended Complaint show that the Service received *neither* of the amended tax returns. Pond eventually asserts that the Service received his amended 2013 return, but not until after September 20, 2019, once Pond had submitted additional copies via certified mail and fax, and after the applicable deadline had expired. Doc. No. 8, ¶¶ 33–39. Under the

---

[3] Pond's Amended Complaint contains allegations that the Service received his amended return, but subsequently lost or destroyed it. Doc. No. 8, ¶¶ 22–23. While the Court must accept all well-pled allegations as true, and construe all factual allegations in the plaintiff's favor, the Court is not required to accept "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts, Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Because Pond alleges that the amended returns were sent in the same envelope, and because Pond received notice from the Service that the 2012 amended return was not received, it is unreasonable for Pond to conclude that the Service received his 2013 amended return. Doc. No. 8, ¶ 20; Doc. No. 8-4. Thus, the Court is not required to accept these statements as true. *E. Shore Mkts, Inc.*, 213 F.3d at 180.

Physical Delivery Rule, even regarding the facts alleged in the Amended Complaint as true, Pond fails to allege facts to establish a clear waiver of sovereign immunity, and thus the Court lacks subject matter jurisdiction. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (a complaint must be dismissed if it "simply fails to allege facts upon which subject matter can be based).

    ii.    *Pond did not allege sufficient facts to show his amended tax return for 2013 was timely filed as determined by Sections 7502(a) and 7502(c).*

Nor does Pond's Amended Complaint allege facts that would establish a waiver of sovereign immunity under 26 U.S.C. § 7502. Under § 7502(c), the registration or certified mail receipt serves as prima facie evidence of delivery, and the date of the registration is deemed the "postmark." 26 U.S.C. § 7502(c)(1). Pond alleges that he submitted his amended 2013 return by certified mail but alleges that he sent it on February 1, 2019. Doc. No. 8, ¶ 33. According to the Amended Complaint and under 26 U.S.C. § 7502(c), Pond's 2013 amended return is deemed "filed" as of February 1, 2019, which is well after the October 2017 deadline.

The other exception outlined in § 7502(a) cannot help Pond either. Section 7502(a) requires that the document be delivered to and received by the Service. *Hull v. United States*, 146 F.3d 235, 239 (4th Cir. 1998). As discussed in the previous section, taken as true, Pond's Amended Complaint admits that the amended tax returns for 2012 and 2013 were not received by the Service. Doc. No. 8, ¶ 20; Doc. No. 8-4. Nor does Pond allege the documents were postmarked by October 26, 2017. Thus, even if the Court assumes as true that Pond mailed the documents on July 18, 2017 (Doc. No. 8, ¶

13

20), he has not alleged sufficient facts to demonstrate his return was timely filed pursuant to 26 U.S.C. § 7502(a). As a result, under the exceptions to the Physical Delivery Rule provided explicitly under § 7502, Pond has failed to establish a clear waiver of sovereign immunity, and thus the Court lacks subject matter jurisdiction. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

  iii.  *Pond did not allege sufficient facts to show his amended tax return for 2013 was timely filed as required by Treas. Reg. § 301.7502-1(e).*

Pond alleges that, even though he cannot prove delivery or a postmark sufficient to show his amended 2013 tax return was timely filed, he still can provide evidence suggesting the amended return was mailed. Specifically, he can provide an affidavit of his accountant showing that the firm's practice then would have been to send the return by First-Class Mail, and that the firm took the mail to the post office daily. Doc. No. 8-8 at 33. Even so, such an affidavit would be extrinsic evidence and would not be permissible to show timely filing of a return. Treasury Regulation § 301.7502-1(e)(2) clarifies the exclusive exceptions to the Physical Delivery Rule:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated [private delivery service], are the *exclusive means* to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. *No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered*.

26 C.F.R. § 301.7502-1(e)(2)(i) (emphasis added).

14

Case 1:21-cv-00083-LCB-LPA   Document 11   Filed 04/29/21   Page 14 of 20

The Fourth Circuit has not answered whether it would permit review of extrinsic evidence to determine a document was timely filed. But other circuits reviewing this issue have rejected the use of such evidence, holding that § 7502 provides the only exceptions to the Physical Delivery Rule and that the common-law Mailbox Rule is no longer available. Some circuits have always maintained that § 7502 overruled the common-law Mailbox Rule, and therefore, never allowed extrinsic evidence, such as witness testimony, to prove a document was mailed on a certain date. *Deutsch v. Comm'r of Internal Revenue*, 599 F.2d 44, 46 (2d Cir. 1979); *Drake v. Comm'r of Internal Revenue*, 554 F.2d 736, 738–39 (5th Cir. 1977); *Miller v. United States*, 784 F.2d 728, 730–31 (6th Cir. 1986); *Pugsley v. Comm'r of Internal Revenue*, 749 F.2d 691, 693 (11th Cir. 1985). Other circuits have interpreted Treasury Regulation § 301.7502-1(e)(2) as foreclosing the use of extrinsic evidence. *See, e.g.*, *Maine Medical Center v. United States*, 675 F.3d 110, 118 (1st Cir. 2012); *Baldwin v. United States*, 921 F.3d 836, 842–43 (9th Cir. 2019) (applying *Chevron* deference to determine the regulation supplanted the common-law Mailbox Rule); *Taha v. United States*, 148 Fed. Cl. 37, 43–44 (Fed. Cl. 2020) (adopting the holding in *Baldwin*).

While this Court previously held that 26 U.S.C. § 7502 permitted extrinsic evidence to demonstrate exceptions to the Physical Delivery Rule, such determination was made before the enactment of 26 C.F.R. § 301.7502-1(e)(2)(i). *Lee Brick & Tile Co., Inc. v. United States*, 132 F.R.D. 414, 420 (M.D.N.C. 1990). Now, the Court should adopt the approach taken in other circuits to find that Treasury Regulation § 301.7502-1(e)(2)(i) bars the application of the common-law Mailbox Rule.

15

In determining whether the regulation is valid, courts apply the two-step analysis established by *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984). At first, courts assess whether Congress spoke "to the precise question at issue." *Id.* at 842. If so, the analysis is complete: the agency and the courts "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. But if the statute is ambiguous or silent, the court reviews whether the agency's interpretation is "based on a permissible construction of the statute." *Id.*

Here, 26 U.S.C. § 7502 is silent on whether Congress intended to displace the common-law Mailbox Rule. *Baldwin*, 921 F.3d at 842. For example, the statute fails to address the issue here, when a taxpayer sends a document by First-Class Mail, but the Service has not received the document. 26 U.S.C. § 7502. Nor does the statute include information related to whether additional evidence, other than the evidence specified in the statute, could raise a presumption of delivery. *Id.*

But under step two of the *Chevron* analysis, Treasury Regulation § 301.7502-1(e)(2)(i) is clearly based on a permissible construction of the statute. *See, Chevron*, 467 U.S. at 843. As discussed, § 7502 caused a circuit split, with some circuits finding that the statute supplemented the common-law Mailbox Rule and others finding the statute had not supplanted the common-law Mailbox Rule. *See, supra* Section II.B. By enacting the regulation, the Treasury Department merely chose to adopt the latter interpretation and outlining the sole means of evidence by which to demonstrate exceptions to the Physical Delivery Rule.

16

Furthermore, as the *Baldwin* court discusses, this interpretation is reasonable because, "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Baldwin*, 921 F.3d at 843 (quoting *Hillman v. Maretta*, 569 U.S. 483, 496 (2013)). Congress enacted 26 U.S.C. § 7502 to provide exceptions to the Physical Delivery Rule, and "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others." *United States v. Johnson*, 529 U.S. 53, 58 (2000).

This Court should adopt the findings of the various other circuits and hold that the exceptions enumerated in 26 U.S.C. § 7502 are the only exceptions to the Physical Delivery Rule. Pond's Amended Complaint fails to allege sufficient facts that physical delivery of his 2013 amended return was made by October 26, 2017; it fails to allege the 2013 amended return was postmarked by October 26, 2017; and it fails to allege the documents were sent via certified or registered mail by October 26, 2017. Doc. No. 8, ¶ 20; Doc. 8-4; Doc. No. 8-8 at 33–34, *see supra,* Footnote 3. His allegations that the documents were mailed, and the affidavit submitted by his accountant, even if true cannot demonstrate his amended 2013 tax return was timely filed. 26 U.S.C. § 7502; 26 C.F.R. § 301.7502-1(e)(2)(i). Thus, Pond has failed to establish a clear waiver of sovereign immunity, and thus the Court lacks subject matter jurisdiction. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## IV. Conclusion

If taken as true, the facts in Pond's Amended Complaint show that someone took the amended 2012 and 2013 tax returns to the Post Office to mail by First-Class Mail on July 18, 2017, that the Service notified him they had not received the amended 2012 tax return, that he sent the amended 2013 tax return by certified mail in February 2019, and that the Service received delivery of the amended 2013 tax return by fax after September 20, 2019. None of these facts, even if true, can demonstrate that Stephen K. Pond filed his 2013 amended tax return before the deadline established by 26 U.S.C. § 6230(c)(2)(A).

As a result, Pond has failed to meet his burden to establish a waiver of sovereign immunity and the Court should dismiss his Amended Complaint pursuant to Rule 12(b)(1).

Dated: April 29, 2021

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General

*/s/ Emily K. Miller*
EMILY K. MILLER
KY Bar #97725
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
(202) 353-7509 (v)
(202) 514-6866 (f)
Emily.K.Miller@usdoj.gov

# CERTIFICATION UNDER LOCAL RULE 7.3(d)

I hereby certify that the foregoing memorandum complies with the applicable word and page limits under Local Rule 7.3(d). The number of words in this memorandum is 5,260.

*/s/ Emily K. Miller*
EMILY K. MILLER
Trial Attorney
United States Department of Justice
Tax Division

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**James C. Adams II (N.C. Bar No. 18063)**
**Adam P.M. Tarleton (N.C. Bar No. 37088)**
**Daniel L. Colston (N.C. Bar No. 52083)**
Brooks, Pierce, McClendon, Humphrey & Leonard
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
(336) 271-3162 (v)
(336) 232-9162 (f)
jadams@brookspierce.com
atarleton@brookspierce.com
dcolston@brookspierce.com
*Counsel for Plaintiff Stephen K. Pond*

> */s/ Emily K. Miller*
> EMILY K. MILLER
> Trial Attorney
> United States Department of Justice
> Tax Division