**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

**Case No. 1:21-cv-00083**

| | |
|---|---|
| **STEPHEN K. POND,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>      **Defendant.** | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br>**(Fed R. Civ. Pro. 12(b)(1))** |

      Plaintiff Stephen K. Pond ("Pond") submits this Response in Opposition to the Motion to Dismiss of the United States. For the reasons set forth herein this Court has subject matter jurisdiction over this dispute and the Government's Motion should be denied.

## INTRODUCTION

      After three years of the IRS losing, destroying, or ignoring nearly every filing, document, or communication made by or on behalf of Plaintiff Stephen Pond, Pond initiated this action to recover over $145,000 in tax overpayments caused entirely by the IRS's own accounting errors. In response, the Government says Pond's claims are barred by sovereign immunity because he has failed to allege delivery of his amended tax returns to the IRS within the applicable statutory deadline.

      In support of its Motion to Dismiss, the Government ignores the allegations of Pond's Amended Complaint, improperly draws inferences in its own favor, and engages in

a factual dispute about what Pond knew or should have known in 2017, all of which are inappropriate on a Motion to Dismiss. A simple look at Pond's allegations shows that Pond alleges that prior to the statutory deadline for initiating his refund claim, his amended tax returns were mailed to and delivered to the IRS at its service center in Holtsville, New York, where they were subsequently lost or destroyed by the IRS. Because Pond initiated his refund claim in time, the United States has waived sovereign immunity, and the Court has jurisdiction over Pond's claims.

Further, the government seeks *Chevron* deference with respect to the IRS's interpretation of 26 U.S.C. § 7502 in an effort to keep Pond from introducing any additional evidence to show that his amended tax returns were delivered in a timely manner. To the extent that the Court engages with the second issue at this stage—which it need not do because Pond has adequately alleged actual delivery of his amended tax returns—the IRS's interpretation should not be granted *Chevron* deference because it is entirely antithetical to the intent of Congress, the purpose of Section 7502, and its own public guidance. Additionally, the IRS's interpretation is wholly unrelated to the agency's area of expertise, and is not a matter in which the Court should defer to the agency. Instead, this Court is better suited to answer the pure questions of common law and statutory construction in order to decide what constitutes competent evidence of compliance with statutory time limits.

In short, taking Pond's allegations as true and drawing all reasonable inferences in Pond's favor, Pond has adequately alleged that his amended tax returns were delivered

before the statutory deadline to initiate a claim for refund. Therefore, the Government's Motion to Dismiss should be denied.

## FACTS

Pond initiated this tax refund action to recover an overpayment of $145,894, resulting from computational errors made by the IRS in applying adjustments from an audit of the 2012 partnership tax return of Insect Shield, LLC to Pond's personal tax return for 2012. Because of the IRS's miscalculations, Pond received a Notice of Computational Adjustment from the IRS service center in Holtsville, New York, showing additional taxes owed in the amount of $29,228, which he promptly paid. Am. Compl. ¶¶ 9, 13–14 (D.E. 8).

After reviewing the IRS's computations further, Pond's accountants discovered the IRS's error and filed amended returns for the tax years 2012 and 2013. *Id.* ¶ 15. After correcting for the IRS's computational errors, Pond was entitled to a refund of $29,228 for the 2012 tax year, plus $2,908.73 in interest. *Id.* ¶ 17. Additionally, because the correct application of the Insect Shield, LLC partnership adjustments to Pond's personal returns resulted in an increase of Pond's passive loss carryovers, Pond was also entitled to a refund of $145,894 for the 2013 tax year. *Id.* ¶ 18. The latter refund is the subject of this action.

Pond signed both amended returns on July 17, 2017, and forwarded them to his accountant, Michael Myrick, at the accounting firm LBA Haynes Strand, PLLC. *Id.* ¶ 19. Mr. Myrick mailed both returns via first-class mail to the IRS's Holtsville, New York, service center on July 18, 2017, in accordance with IRS guidelines and instructions, and

pursuant to the firm's standard mailing practices. *Id.* ¶¶ 20–21. That same day, Mr. Myrick also prepared a Form 843 Claim for Refund or Abatement, seeking a refund of interest erroneously assessed for the 2012 tax year, and mailed it via first-class mail to the IRS service center in Covington, Kentucky, also in accordance with IRS guidelines and instructions, and pursuant to the firm's standard mailing practices. *Id.* ¶ 24. Pond alleges that his amended returns were received by the IRS prior to October 26, 2017, and were "subsequently lost or destroyed by IRS agents at the Holtsville service center." *Id.* ¶¶ 22–23.

On September 14, 2017, Pond received a letter from the IRS's Andover, Massachusetts office indicating that the Andover office had received Pond's Form 843, but not his 2012 amended return. Pond's accountants responded to this letter by providing a second copy of the 2012 amended return to the Andover office, noting that the 2012 return had been filed with the Holtsville service center, and that "it was assumed that [the Andover] office would retrieve a copy of the Form 1040X as needed from that office in order to process the Form 843." *Id.* ¶¶ 27–28; Exhibit E (D.E. 8-5).

On November 17, 2017, Pond was informed by the Andover office that his correspondence regarding his Form 843 request for refund of interest for 2012 had been referred to agents at the Holtsville service center, who would contact him in the next 45 days regarding his claims. Am. Compl. ¶ 29. Pond never heard from anyone at the Holtsville service center. *Id.* ¶ 30.

After months of silence, Pond's entire 2012 refund—but not his refund for 2013—arrived in March of 2018. *Id.* ¶ 31. When counsel for Pond contacted the IRS to inquire about the status of the 2013 refund, agents reported that they could not locate the document in their system. *Id.* ¶ 32. Counsel then submitted an additional copy of the 2013 Form 1040X, and after months of no response from the IRS, contacted the IRS again, at which point he was told that the refund claim had been submitted to a TEFRA agent who would contact Pond regarding the status of his claim. *Id.* ¶¶ 33–34. The IRS agents that Pond's counsel spoke to could not identify which TEFRA agent the claim had been assigned to, but they assured him that the agent would be located and would reply within 30 days. *Id.* ¶ 34. Despite these promises, no TEFRA agent ever responded to Pond, and the claim was never processed. *Id.* ¶¶ 35–36.

In September of 2019, counsel for Pond contacted the IRS once again to learn why there had still been no response regarding the 2013 amended return. *Id.* ¶ 36. At that point, counsel for Pond learned that despite having already sent two copies of the 2013 amended return—one by regular United States mail and one by certified mail for which Pond had the return receipt—the return had still not been processed, and agents still could not locate the 2013 amended return in the IRS's system. *Id.* In other words, the second copy of Pond's 2013 amended return, which had been undeniably received, had also been lost or destroyed. In response, counsel for Pond provided a third copy of the 2013 Form 1040X via fax directly to an IRS agent (notably, not in the Holtsville service center), at which point the IRS promptly denied Pond's refund claim on grounds that the statute of

5

limitations period had run for submitting the claim. *Id.* at 38. However, in its denial letter, the IRS stated that the return was received on July 17, 2017, indicating that the original amended return *had* been received. *Id.* ¶ 39; Exhibit G (D.E. 8-7).

After filing a formal protest appealing the denial of his 2013 claim for refund, Pond still did not hear from anyone at the Holtsville service center. Am. Compl. ¶¶ 40–41. Counsel for Pond then contacted the IRS yet again in June of 2020 to inquire about the status of his appeal, at which point he learned that the protest—like the two previously-submitted copies of the 2013 amended return—had never been processed by the Holtsville service center and was never assigned to an agent. *Id.* ¶ 42.

Based on a recommendation from an agent via the IRS's practitioner priority hotline, counsel for Plaintiff submitted an additional copy of Pond's protest to the IRS's national Office of Appeals in Washington, D.C., accompanied by a letter asking that office to process his appeal since the Holtsville service center appeared to be incapable of doing so. *Id.* ¶ 43. In a truly Kafkaesque response, the IRS replied to counsel's letter saying that no record of an appeal existed for Pond, who therefore needed to initiate his appeal protest directly with the Holtsville service center. *Id.* ¶ 44. In other words, the Holtsville service center had lost or destroyed every copy of Pond's amended returns and every copy of his appeal protest and had failed to process anything.

## STANDARD OF REVIEW

"When a defendant grounds its Rule 12(b)(1) challenge on a facial attack of the sufficiency of the pleading, the Court must, as with a Rule 12(b)(6) motion, accept the

6

allegations of the complaint as true and construe all reasonable inferences in the manner most favorable to the plaintiff." *Kirkcaldy v. Richmond Cty. Bd. of Educ.*, 212 F.R.D. 289, 294 (M.D.N.C. 2002); *see also Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013).

## ARGUMENT

This Court has jurisdiction to hear Pond's claims because Pond has alleged facts demonstrating that his 2013 amended return was delivered to the IRS Holtsville service center prior to the statutory deadline of October 26, 2017.

In its brief, the IRS raises two arguments, one factual and one legal. First, the IRS claims that the allegations in the Amended Complaint show that, as a matter of fact, Pond's 2013 amended return "was *not* delivered to or received by the Service on or before October 26, 2017." Def. Br. at 12 (D.E. 11). Second, the IRS argues that its own interpretation of statutory filing requirements in Treasury Regulation § 301.7502-1(e)(2) bars Pond from offering any additional extrinsic evidence to prove delivery, thus negating his claim. *Id.* at 14–17. The Government asks this Court to defer to the IRS's interpretation pursuant to *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984). *Id.* at 16.

In its first argument, the Government completely ignores the allegations of Pond's Amended Complaint, engages in a factual dispute with respect to Pond's knowledge about the status of his amended returns, and asks this Court to draw inferences in its own favor, all of which are improper at this stage of the proceedings.

7

With respect to the Government's second argument, the IRS's interpretation is not entitled to *Chevron* deference because Congress has expressed a clear intent to make proof of certified or registered mail one—but not the exclusive—method of proving delivery under Section 7502. Thus, Pond has adequately stated that his amended returns were placed in the mail in time to reach the IRS Holtsville service center in the normal course of delivery, and he should be allowed to offer evidence demonstrating the same. Regardless, the Government's Motion lacks merit and should be denied.

I.   **THE GOVERNMENT IGNORES THE ALLEGATIONS IN POND'S AMENDED COMPLAINT AND IMPERMISSIBLY DRAWS INFERENCES IN ITS FAVOR REGARDING DELIVERY OF HIS 2013 AMENDED RETURN.**

The Government argues that Pond must have known in September 2017 that the Holtsville service center had not received his 2013 amended return, because he received a letter stating that the IRS's Andover office had received his Form 843 for 2012, but not his 2012 Form 1040X. Def. Br. at 5. This attempt to create a factual dispute about what Pond knew or should have known is entirely inappropriate at the Motion to Dismiss stage.

Nowhere does Pond allege that he sent his amended returns with the Form 843 to the IRS office in Covington or the IRS office in Andover. Instead, Pond alleges that his 1040X returns were mailed to the service center in Holtsville, New York, where they were subsequently "lost or destroyed by IRS agents." Am. Compl. ¶¶ 20, 23. The Government's "conclusion" would require the Court to ignore the allegations of Pond's complaint and draw inferences in favor of the Government, both of which are impermissible at this stage of the proceeding. *See Cooksey*, 721 F.3d at 234.

8

The Government assumes without evidence that if the Covington and Andover offices did not receive Pond's 2012 Form 1040X from the Holtsville service center, then the Holtsville service center must not have received it or the 2013 Form 1040X in the first place. Additionally, in a footnote, the Government simply asks the Court to disregard Pond's allegation that the Holtsville service center lost or destroyed the returns as an "unwarranted inference" and "unreasonable conclusion" that the Court need not accept as true. Def. Br. at 12 n.3. Thus, the Government relies on its own unpled facts while ignoring facts properly pled by Pond.

There is nothing in Pond's allegations to suggest that the Holtsville service center did not receive his amended returns prior to the statutory deadline. The Amended Complaint specifically alleges that Pond's returns were postmarked July 18, 2017, and that the IRS received them at the Holtsville service center before October 26, 2017. Am. Compl. ¶¶ 21–22. The Amended Complaint also explains that because the amended returns were sent to the Holtsville service center and the Form 843 was sent to the Covington office, Pond's accountant believed "the Covington office would retrieve a copy of the Form 1040X from the Holtsville service center." *Id.* ¶ 27. Such a belief is not unreasonable, given that the documents were sent to two different IRS locations as required by the IRS.

Given the multitude of allegations detailing a repeated pattern of documents lost or destroyed by the IRS with respect to this refund claim and protest, both in general and with respect to the Holtsville service center in particular, the allegations that the IRS also lost

or destroyed Pond's amended returns are far from "unwarranted" or "unreasonable," as the Government claims.

Indeed, the Amended Complaint contains a litany of allegations showing that nearly every document Pond sent to the Holtsville service center between 2017 and 2019 was lost, destroyed, or ignored by the IRS. *See, e.g.*, Am. Compl. ¶¶ 29–30 (despite being promised a reply from the Holtsville service center regarding his refund, Pond was never contacted by anyone); *id.* ¶ 34 (the IRS could not determine which agent had been assigned to Pond's claims); *id.* ¶ 35 (despite being told the TEFRA agent assigned to his case would contact Pond, he "received no response"); *id.* ¶ 36 (IRS agents were unable to locate the duplicate copy of the 2013 Form 1040X mailed to the Holtsville service center); *id.* ¶¶ 40–42 (IRS agents acknowledged that Pond's appeal was never processed in any way); *id.* ¶ 43 (no record existed of Pond ever filing a tax protest).

Therefore, along with Pond's other allegations, this Court must accept his allegations that the IRS lost or destroyed his 2013 Form 1040X as a reasonable inference at this stage of the proceedings, particularly in light of his subsequent dealings with the IRS. *See Alexander v. United States*, No. C/A 6:92-2803-3, 1993 WL 216773, at *2 (D.S.C. Mar. 24, 1993) (noting that it is "general knowledge that [IRS] employees have lost, misplaced and/or destroyed returns filed with [the IRS]").

Finally, the Government ignores its own documents that create a factual issue concerning when it received Pond's 2013 amended return. In its October 1, 2019 letter denying Pond's refund claim, the IRS clearly noted that Pond's 2013 Form 1040X return

was received on July 17, 2017, months before the October 26, 2017 statutory deadline. Am. Compl. ¶ 39; Exhibit G.  That alone creates a plausible inference that Pond's amended returns were delivered to the IRS prior to the statutory deadline.  In the face of such a statement, the Government can hardly characterize Pond's allegations that the Holtsville service center received his amended returns as an "unreasonable conclusion."

The necessary implication of the Government's position is that the IRS never loses or destroys documents internally and has perfect communication between offices, a situation known not to be true.  *See Alexander*, 1993 WL 216773, at *2.

The Court should accept Pond's plausible allegations that the amended returns were delivered to and received by the IRS as true, thereby meeting the requirements of Section 7502(a).  *See Hull v. United States*, 146 F.3d 235, 239 (4th Cir. 1998).  Accordingly, Pond has stated a valid claim for refund pursuant to 26 U.S.C. § 7422, and the Court has jurisdiction over the claim.

## II.     THE COURT SHOULD REJECT THE IRS'S INTERPRETATION OF 26 U.S.C. 7502(C) AND HOLD THAT THE STATUTE DOES NOT BAR THE INTRODUCTION OF EXTRINSIC EVIDENCE TO PROVE DELIVERY.

Because Pond has plausibly alleged actual delivery of his amended returns under Section 7502(a), the Court need not address whether the IRS's interpretation of 26 U.S.C. § 7502(c) as prohibiting extrinsic evidence to prove delivery is entitled to *Chevron* deference. *See Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. C.I.R.*, 523 F.3d 140, 147 (3d Cir. 2008) (concluding that the record revealed sufficient evidence of direct delivery to preclude summary judgment in favor of the

Government, regardless of the IRS's interpretation of 26 U.S.C. § 7502). However, should the Court find that Pond has failed to allege actual delivery of his amended returns, the Court should conclude that the IRS's interpretation of Section 7502(c) is contrary to the intent of Congress and is *not* entitled to *Chevron* deference. As a result, Pond's allegations in the Amended Complaint sufficiently allege that the amended returns were placed in the mail and received by the IRS in the usual time prior to the statutory deadline of October 26, 2017.

Section 7502(c) outlines mailing methods sufficient to raise a presumption that a document was delivered to the IRS. It reads in relevant part:

> (1) **Registered Mail –** For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail–
>
> (A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
>
> (B) the date of registration shall be deemed the postmark date.

Through its agency rule-making process, the IRS has declared the provisions of Section 7502(c) to be not just one method, but the *exclusive* means to establish prima facie evidence of delivery in all instances. 26 C.F.R. § 301.7502-1(e)(2)(i). Thus, the IRS states that in the absence of proof of actual delivery, no evidence besides proof of proper use of registered or certified mail, or proof of a private delivery service, can raise a presumption that the document was delivered. *Id.* The Government argues that the IRS's interpretation of 7502(c) bars Pond from presenting any extrinsic evidence of timely mailing and

12

abrogates the long-established common-law "mailbox rule." *See Rosenthal v. Walker,* 111 U.S. 185, 193 (1884) (stating that if a document is properly mailed, there is a presumption that "it reached its destination at the regular time and was received by the person to whom it was addressed").

Despite the Government's insistence that the Court defer to the agency's interpretation of Section 7502, an examination of the purpose and legislative history of the statute shows that Congress did *not* intend to restrict taxpayers exclusively to the provisions set forth in Section 7502(c) to prove delivery. Accordingly, because Congress has expressed its intent, the IRS's interpretation should receive no deference.

Alternatively, even if this Court finds that Congress's intent with regards Section 7502 is unclear, the Court should not defer to the IRS because its interpretation has no basis in the agency's area of expertise. Courts, not the IRS, are better positioned to determine a statute's effect on the common law and what constitutes competent and admissible evidence of compliance with a statutory deadline. Additionally, the IRS's interpretation is fundamentally unreasonable because it contradicts the Service's own filing instructions. Therefore, this Court should give effect to Congress's intent, hold that the common-law mailbox rule is still available to Pond to prove delivery, and conclude that Pond has adequately alleged that his 2013 Form 1040X was placed in the mail in time to reach the Holtsville service center in the usual course of mail delivery.

**A.** **Based upon traditional interpretations of statutory construction, this Court can ascertain that Congress did not intend Section 7502(c) to provide the exclusive means of proving delivery.**

In determining whether an agency's interpretation of a statute is permissible, courts "conduct the two-step analysis articulated in *Chevron*." *Philip Morris USA, Inc. v. Vilsack*, 736 F.3d 284, 289 (4th Cir. 2013). First, courts determine whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n.9; *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("[D]eference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). Thus, agency deference only comes into play where the court determines "that Congress did not actually have an intent" with respect to the statute at issue. *Chevron*, 467 U.S. at 845.

At this first step in the *Chevron* analysis, courts consider "the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and other relevant statutes," *Philip Morris*, 736 F.3d at 289 (internal quotations omitted). In considering the purpose of the statute, "[a] fair reading of legislation demands a fair

understanding of the legislative plan." *King v. Burwell*, 576 U.S. 473, 498 (2015). At this stage, courts give no weight to the agency's interpretation. *Philip Morris*, 736 F.3d at 289.

The plain language of Section 7502 reveals that its purpose was to build on the common law and increase, not restrict, protections for the taxpayer and the methods by which taxpayers could prove delivery via mail. Additionally, the legislative history of Section 7502 demonstrates that Congress intended to allow taxpayers to present other evidence of delivery and did not intend to make the provisions of Section 7502(c) exclusive.

The Internal Revenue Code requires actual receipt or payment to constitute filing. *Lee Brick & Tile Co., Inc. v. United States*, 132 F.R.D. 414, 418 (M.D.N.C. 1990). "To help determine when the pertinent document was physically delivered, courts developed the common-law mailbox rule," which creates a presumption of delivery "in the usual time" if the document was properly mailed. *Philadelphia Marine*, 523 F.3d at 147; *see also Estate of Wood v. C.I.R.,* 909 F.2d 1155, 1159 (8th Cir. 1990) (noting that prior to Section 7502's enactment, courts had generally applied the common-law presumption of delivery upon proof of mailing). Applying this presumption helps alleviate the "harshness of the physical delivery rule," which had put taxpayers at risk that their mailings may "be delayed or not delivered at all through no fault of the taxpayer." *Baldwin v. United States*, 921 F.3d 836, 839–40 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 690, 206 L. Ed. 2d 231 (2020). Under the common law mailbox rule, the Government is free "to rebut this presumption with evidence of untimely receipt." *Philadelphia Marine*, 523 F.3d at 147.

Case 1:21-cv-00083-LCB-LPA   Document 14   Filed 06/03/21   Page 15 of 24

Before Section 7502 was enacted in 1954, tax documents were considered timely filed only if they were physically delivered to the IRS by the applicable deadline. *See United States v. Lombardo*, 241 U.S. 73, 76 (1916). In 1954, Congress enacted Section 7502(a), which states that for any "document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date," the date of the postmark shall be deemed the date of delivery, even if the document arrives after the applicable filing deadline. In other words, "the statute's function is to excuse taxpayers for *late* receipt." *Philadelphia Marine*, 523 F.3d at 149 (emphasis in original). These protections go beyond those found in the traditional common-law mailbox rule, which merely created a presumption of delivery "in the usual time," which presumption could be rebutted with evidence of untimely receipt. *See id.* at 147.

When viewed "against the backdrop" of the common-law mailbox rule, it is apparent that Congress's intent in enacting Section 7502 was to continue allowing evidence of mailing to create a presumption of delivery "in the usual time" under the common-law mailbox rule, while also creating additional statutory protections for filers using registered mail. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1016, (2020) ("[Courts]) generally presume that Congress legislates against the backdrop of the common law."); *United States v. Texas*, 507 U.S. 529, 534, 113 S. Ct. 1631, 1634, 123 L. Ed. 2d 245 (1993) (explaining that where there are long-standing common law principles, "Congress does not write upon a clean slate"); *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory

construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Because Congress "intended that section 7502 would operate to alleviate hardship, for the benefit of the taxpayer," *Estate of Wood*, 909 F.2d at 1161, Congress would not at the same time seek to bar other evidence available at common law and thereby *increase* hardship on the taxpayer, *see Isbrandtsen*, *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783–84 (1952) (explaining that legislation "of a remedial, beneficial and amendatory character . . . . should be interpreted so as to effect its purpose"); *Philadelphia Marine*, 523 F.3d at 150 ("Moreover, as a matter of logic, it is difficult to imagine that Congress, by passing a law that was designed to *protect* taxpayers who meet § 7502's requirements, would (without so stating) simultaneously seek to *roll back the protections* for taxpayers that already exist at common law." (emphasis in original)).  Precluding evidence of documents sent via first-class mail would bring back the harshness of the old physical delivery rule, where filings were "not delivered at all through no fault of the taxpayer." *Baldwin*, 921 F.3d at 840.  Although the IRS may prefer to shift the risk of non-delivery— or the IRS losing or destroying documents—to the vast numbers of taxpayers who rely on first-class mail to file their returns, Congress never intended to do so.

The legislative history of Section 7502 further indicates that Congress intended to allow taxpayers to use other means to prove delivery as well.  Congress explicitly stated as much.  Senate and House reports relating to a 1968 amendment to Section 7502 show that registered mail was meant to be one—but not the only—means of proving delivery: "In the

case of a deposit sent by registered mail, the date of registration is to be deemed the date of mailing. *The taxpayer, of course, could also establish the date of mailing by other competent evidence*." S. Rep. No. 90–9014 (1968), 1968 U.S.C.C.A.N. 2354, 2373; H.R.Rep. No. 90–1104 (1968), 1968 U.S.C.C.A.N. 2341, 2354 (emphasis added).

Although Congress was speaking to Section 7502(e) in that instance, it clearly was not limited only to that subsection. Section 7502(c)'s provisions apply "for purposes of this section," which includes all of the statutory provisions for timely mailing and filing. Thus, Congress clearly intended to continue to allow taxpayers to present "other competent evidence" in addition to the methods articulated in Section 7502(c) when submitting their returns.

Because Congress's intent is evident using traditional methods of statutory construction, the Court need not defer to the IRS's interpretation to the contrary. Instead, this Court should give effect to Congress's clear intent.

**B. The IRS's interpretation of Section 7502 is not owed *Chevron* deference because it is not based on agency expertise and contradicts the IRS's own filing guidelines.**

Even if the Court finds Congress's intent ambiguous regarding Section 7502, the IRS's interpretation must still be "based upon a permissible construction of the governing statute." *Philip Morris*, 736 F.3d at 289. Generally, a court will not supplant the agency's construction with its own, when the agency's construction "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." *Id.* (quoting *United States v. Shimer*, 367 U.S. 374, 383 (1961)).

However, as the Supreme Court recently reiterated, to fall within the areas committed to the agency's care, the agency's interpretation "must in some way implicate its substantive expertise." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). That is because "[a]dministrative knowledge and experience largely 'account [for] the presumption that Congress delegates interpretive lawmaking power to the agency.'" *Id.* (quoting *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 153, (1991)). Such deference is appropriate when "a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy," *Chevron*, 467 U.S. at 866, or where resolution of the ambiguity is "more a question of policy than of law," *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696 (1991).

In contrast, where an agency's interpretation of a statute lies outside its field of expertise, the Supreme Court has refused to offer the agency deference. *See King v. Burwell*, 576 U.S. at 486 (refusing to extend *Chevron* deference to the IRS in the area of health care law). In particular, deference is inappropriate when a court concludes "that an interpretation does not reflect an agency's authoritative, expertise-based, fair, or considered judgment." *Kisor*, 139 S. Ct. at 2414 (internal quotation marks omitted) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229–231 (2001), as adopting the same approach in the context of *Chevron* deference).

Here, the IRS's interpretation of Section 7502, as found in Treasury Regulation 301.7502-1(e)(2)(i), is neither expertise-based, considered, nor fair. The IRS's interpretation does not depend at all on the agency's field of expertise, such as a nuanced

understanding of tax law, technical terms of art under the Internal Revenue Code, or tax policy considerations. Rather, the IRS's interpretation centers on issues of pure statutory construction concerning the continued applicability of a judicially created rule from the nineteenth century. Thus, the question is a "narrow legal question," quite different from the question of interpretation that arises when an agency applies a legal standard "to a particular set of facts." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 448, 107 S. Ct. 1207, 1221, 94 L. Ed. 2d 434 (1987). It is difficult to imagine questions more appropriate for the judiciary to answer than questions of the common law's continued applicability and what constitutes competent, admissible evidence to meet a statutory deadline. Courts do that routinely in assessing compliance with statutes of limitations.

Additionally, in its proposed rulemaking, the IRS did not demonstrate any expertise or considered judgment, stating only that it "currently accepts only a registered or certified mail receipt to establish a presumption of delivery if the IRS has no record of ever having received the document in question." 69 FR 56377, 56378 (attached hereto as Exhibit A). The IRS offers no reasoning to support this position, which the majority of circuit courts rejected. *See Philadelphia Marine*, 523 F.3d at 148–150; *Sorrentino v. IRS*, 383 F.3d 1187, 1193 (10th Cir. 2004); *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992); *Estate of Wood*, 909 F.2d at 1160. The IRS asserted that its proposed rule change "provides taxpayers with certainty that, under the Code, a certified or registered mail receipt will establish prima facie evidence of delivery." 69 FR at 56378. However, registered and certified mail were already available at that point to provide prima facie evidence of

delivery.  The IRS offered no reasons why other evidence could not serve as proof of delivery.

Finally, the IRS's interpretation contradicts its own instructions to taxpayers and is therefore entirely unreasonable.  In its filing instructions to the public, the IRS states "[y]our paper return is filed on time if it is mailed in an envelope that is properly addressed, has enough postage, and is postmarked by the due date."  Department of the Treasury, *Your Federal Income Tax,* Publication 17 at page 10 (2020) (attached hereto as Exhibit B). Nowhere does the IRS state that physical delivery is required.  Nor does it state that registered and certified mail are the only means to prove delivery.  The IRS's filing guidelines have the effect of "lulling taxpayers into thinking that mailing is certainly filing and the IRS has waived any objection to any requirement that a taxpayer mail in his return by certified or registered mail."  *Alexander*, 1993 WL 216773 at *2 (D.S.C. March 24, 1993).

Notably, in *Alexander*, the court estopped the Government from arguing that Section 7502(c) provided the exclusive means to prove delivery, reasoning "if the IRS were going to take the position that sending by certified or registered mail constitutes the exclusive means of establishing delivery, then it would advise the taxpaying public." Nearly thirty years later, the IRS still fails to disclose that any taxpayer relying on any class of mail other than registered or certified bears all risk if the post office—or the IRS itself—loses or destroys the documents.  Because its interpretation of Section 7502 contradicts its own

instructions to taxpayers, the IRS's interpretation is fundamentally unfair and unreasonable. Therefore, it should receive no deference. *See Kisor*, 139 S. Ct. at 2414.

Instead, the Court should determine that Pond's allegations plausibly demonstrate that his amended returns were placed in the mail, creating the presumption that they were delivered in the regular time. In his amended complaint, Pond alleges that his amended returns were placed in the mail by his accountant, using his firm's standard mail practices, on July 18, 2017, and were delivered to the Holtsville, New York service center prior to October 26, 2017. Am. Compl. ¶¶ 20–22. These facts, taken as true at the 12(b) stage of the proceedings, establish that Pond's returns were received by the IRS in the normal course of delivery, prior to the October 26, 2017 deadline for filing a claim for refund. Therefore, Pond has established that the United States has waived sovereign immunity with respect to his claim. Accordingly, this Court has jurisdiction, and dismissal pursuant to 12(b)(1) is improper.

## CONCLUSION

Pond's Amended Complaint alleges facts demonstrating that he timely submitted his 2013 Form 1040X to the IRS seeking a refund of taxes he erroneously paid due to errors by the IRS, and that the amended return was timely delivered to the IRS. To the extent the facts do not demonstrate that clearly, Pond has made sufficient allegations of extrinsic evidence from which the Court can conclude either at this stage or at a later stage, that the 2013 amended tax return was timely delivered to the IRS notwithstanding the IRS's interpretation of 26 U.S.C. § 7502, which is inconsistent with the text of the statute,

22

congressional intent, and the IRS's own public guidance to taxpayers. For these and the foregoing reasons, the Court should conclude that it has subject matter jurisdiction over this matter and that the Government's Motion to Dismiss should be denied.

Respectfully submitted, this the 3rd day of June, 2021.

/s/ Daniel L. Colston
James C. Adams II
N.C. Bar No. 18063
jadams@brookspierce.com
Adam P.M. Tarleton
N.C. Bar No. 37088
atarleton@brookspierce.com
Daniel L. Colston
N.C. Bar No. 52083
dcolston@brookspierce.com

OF COUNSEL:
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone: (336) 373-8850
Facsimile: (336) 378-1001

## CERTIFICATION UNDER LOCAL RULE 7.3(d)

I hereby certify that the foregoing memorandum complies with the applicable word and page limits under Local Rule 7.3(d). The number of words in this memorandum is 6,006.

/s/ Daniel L. Colston