# Exhibit A



*For the reasons discussed above, I certify that the proposed regulation:*

1. Is not a "significant regulatory action" under Executive Order 12866;

2. Is not a "significant rule" under the DOT Regulatory Policies and Procedures (44 FR 11034, February 26, 1979); and

3. Will not have a significant economic impact, positive or negative, on a substantial number of small entities under the criteria of the Regulatory Flexibility Act.

We prepared a regulatory evaluation of the estimated costs to comply with this proposed AD. See the **ADDRESSES** section for a location to examine the regulatory evaluation.

List of Subjects in 14 CFR Part 39

Air transportation, Aircraft, Aviation safety, Safety.

The Proposed Amendment

Accordingly, under the authority delegated to me by the Administrator, the FAA proposes to amend 14 CFR part 39 as follows:

PART 39—AIRWORTHINESS DIRECTIVES

1. The authority citation for part 39 continues to read as follows:

Authority: 49 U.S.C. 106(g), 40113, 44701.

§ 39.13 [Amended]

2. The FAA amends § 39.13 by adding the following new airworthiness directive (AD):

Boeing: Docket No. FAA-2004-19140; Directorate Identifier 2004-NM-84-AD.

Comments Due Date

(a) The Federal Aviation Administration (FAA) must receive comments on this AD action by November 5, 2004.

Affected ADs

(b) This AD is related to AD 2003-18-05, amendment 39-13296.

Applicability

(c) This AD applies to Boeing Model 757 series airplanes, line numbers 1 through 639 inclusive, powered by Pratt & Whitney engines; certificated in any category.

Unsafe Condition

(d) This AD was prompted by reports of corrosion and cracking on midspar fittings on the nacelle struts of several Boeing Model 757 series airplanes. We are issuing this AD to detect and correct cracking in the midspar fittings of the nacelle struts, consequent reduced structural integrity of the struts, and possible separation of an engine and strut from the airplane.

Compliance

(e) You are responsible for having the actions required by this AD performed within the compliance times specified, unless the actions have already been done.

Inspections for Group 1 Airplanes

(f) For airplanes identified as Group 1 in Boeing Special Attention Service Bulletin 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, dated May 13, 1999: Within 18 months after the effective date of this AD, do general visual and detailed inspections for evidence of corrosion and/or cracking of the midspar fittings located in the nacelle struts, in accordance with the Accomplishment Instructions of Boeing Special Attention Service Bulletin 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, dated May 13, 1999. Repeat the inspections thereafter at intervals not to exceed 18 months until the requirements of paragraph (j) are accomplished.

Note 1: For the purposes of this AD, a general visual inspection is defined as: "A visual examination of an interior or exterior area, installation, or assembly to detect obvious damage, failure, or irregularity. This level of inspection is made from within touching distance unless otherwise specified. A mirror may be necessary to enhance visual access to all exposed surfaces in the inspection area. This level of inspection is made under normally available lighting conditions such as daylight, hangar lighting, flashlight, or droplight and may require removal or opening of access panels or doors. Stands, ladders, or platforms may be required to gain proximity to the area being checked."

Note 2: For the purposes of this AD, a detailed inspection is defined as: "An intensive visual examination of a specific structural area, system, installation, or assembly to detect damage, failure, or irregularity. Available lighting is normally supplemented with a direct source of good lighting at intensity deemed appropriate by the inspector. Inspection aids such as mirror, magnifying lenses, etc., may be used. Surface cleaning and elaborate access procedures may be required."

Inspections for Group 2 Airplanes

(g) For airplanes identified as Group 2 in Boeing Special Attention Service Bulletin 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, dated May 13, 1999: Within 18 months after the effective date of this AD, do a general visual inspection to identify the type of material the midspar fittings are made from, in accordance with the Accomplishment Instructions of Boeing Special Attention Service Bulletin 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, dated May 13, 1999.

(1) If all four midspar fittings are made of 15-5PH CRES material, no further action is required by this AD.

(2) If any midspar fitting is made of 4330M material, do the inspections required by paragraph (h) of this AD.

(h) For Group 2 airplanes with fittings made of 4330M material: After the inspection required by paragraph (g) of this AD, but before further flight: Do a general visual and a detailed inspection of the 4330M midspar fittings for evidence of corrosion and/or cracking, in accordance with the Accomplishment Instructions of Boeing Special Attention Service Bulletin 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, dated May 13, 1999. Repeat the inspections for corrosion and/or cracking thereafter at intervals not to exceed 18 months until the requirements of paragraph (j) of this AD are accomplished.

Corrective Actions

(i) For Group 1 and Group 2 airplanes: If any corrosion or cracking is found during any inspection required by paragraph (f) or (h) of this AD, before further flight, replace the affected midspar fitting with a new midspar fitting by accomplishing all of the applicable actions in accordance with the Accomplishment Instructions of Boeing Special Attention Service Bulletin 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, dated May 13, 1999. Replacement of an affected midspar fitting terminates the repetitive inspections required by paragraphs (f) and (h) of this AD for that fitting only.

Optional Terminating Action

(j) Replacement of all of the midspar fittings with new midspar fittings in accordance with the Accomplishment Instructions of Boeing Special Attention Service Bulletin 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, dated May 13, 1999, terminates the repetitive inspections required by paragraphs (f) and (h) of this AD.

Actions Accomplished Previously

(k) Accomplishment of the nacelle strut and wing modification required by AD 2003-18-05, amendment 39-13296, is considered acceptable for compliance with the requirements of this AD.

Alternative Methods of Compliance (AMOCs)

(l)(1) The Manager, Seattle Aircraft Certification Office (ACO), FAA, has the authority to approve AMOCs for this AD, if requested in accordance with the procedures found in 14 CFR 39.19.

(2) An AMOC that provides an acceptable level of safety may be used for any replacement required by this AD, if it is approved by a Boeing Company Designated Engineering Representative who has been authorized by the Manager, Seattle ACO, to make those findings.

Issued in Renton, Washington, on September 13, 2004.

Ali Bahrami,

*Manager, Transport Airplane Directorate, Aircraft Certification Service.*

[FR Doc. 04-21176 Filed 9-20-04; 8:45 am]

**BILLING CODE 4910-13-P**

---

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Part 301

[REG-138176-02]

RIN 1545-BA99

Timely Mailing Treated as Timely Filing

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Notice of proposed rulemaking.

---

**SUMMARY:** This document contains proposed regulations amending a Treasury Regulation to provide that, other than direct proof of actual

delivery, a registered or certified mail receipt is the only prima facie evidence of delivery of documents that have a filing deadline prescribed by the internal revenue laws. The proposed regulations are necessary to provide greater certainty on this issue and to provide specific guidance. The proposed regulations affect taxpayers who mail Federal tax documents to the Internal Revenue Service or the United States Tax Court.

**DATES:** Written or electronic comments and requests for a public hearing must be received by December 20, 2004.

**ADDRESSES:** Send submissions to: CC:PA:LPD:PR (REG–138176–02), room 5203, Internal Revenue Service, POB 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG–138176–02), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC or sent electronically, via the IRS Internet site at: *www.irs.gov/regs* or via the Federal eRulemaking Portal at *http://www.regulations.gov/* (IRS—REG–138176–02).

**FOR FURTHER INFORMATION CONTACT:** Concerning the regulations, Charles A. Hall, (202) 622–4940; concerning submissions, Sonya Cruse, (202) 622–7180 (not toll-free numbers).

**SUPPLEMENTARY INFORMATION:**

## Paperwork Reduction Act

The collection of information contained in this notice of proposed rulemaking has been submitted to the Office of Management and Budget for review in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)). Comments on the collection of information should be sent to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503, with copies to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, SE:CAR:MP:T:T:SP, Washington, DC 20224. Comments on the collection of information should be received by November 22, 2004. Comments are specifically requested concerning:

Whether the proposed collection of information is necessary for the proper performance of the functions of the Internal Revenue Service, including whether the information will have practical utility;

The accuracy of the estimated burden associated with the proposed collection of information (*see* below);

How the quality, utility, and clarity of the information to be collected may be enhanced;

How the burden of complying with the proposed collection of information may be minimized, including through the application of automated collection techniques or other forms of information technology; and

Estimates of capital or start-up costs and costs of operation, maintenance, and purchase of service to provide information.

The collection of information in this proposed regulation is in § 301.7502–1(e). This collection of information is voluntary. The likely recordkeepers are taxpayers who want to have evidence to establish the postmark date and prima facie evidence of delivery when using registered or certified mail.

*Estimated total annual recordkeeping burden:* 1,084,765 hours.

*Estimated average annual burden hours per recordkeeper:* 6 minutes (.10 hours).

*Estimated number of recordkeepers:* 10,847,647.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

## Background

This document contains proposed regulations amending 26 CFR part 301 under section 7502 of the Internal Revenue Code. Section 7502(a) first appeared as part of the recodification of the Code in 1954. Section 7502(a) is commonly known as the timely mailing/timely filing rule. Section 301.7502–1 of the Procedure and Administration Regulations provides rules for taxpayers to follow to qualify for favorable treatment under section 7502. There is a conflict among the Circuits of the United States Court of Appeals as to whether the provisions in section 7502 provide the exclusive means to establish prima facie evidence of delivery of a document to the IRS or the United States Tax Court. In particular, courts have reached differing conclusions regarding whether a taxpayer may raise a presumption of delivery of Federal tax documents to the IRS and the United States Tax Court only in situations in which the taxpayer uses registered or certified mail. These proposed regulations clarify the existing regulations and provide guidance on the need to use registered or certified mail to file documents with the IRS and the United States Tax Court to enjoy a presumption of delivery.

## Explanation of Provisions

These proposed regulations amend § 301.7502–1(e)(1) to clarify that, other than direct proof of actual delivery, the exclusive means to establish prima facie evidence of delivery of Federal tax documents to the IRS and the United States Tax Court is to prove the use of registered or certified mail. The IRS currently accepts only a registered or certified mail receipt to establish a presumption of delivery if the IRS has no record of ever having received the document in question. This policy not only is consistent with section 7502(c) but also provides taxpayers with certainty that, under the Code, a certified or registered mail receipt will establish prima facie evidence of delivery. Accordingly, the proposed regulations merely clarify and confirm current IRS practice under the existing regulations. These proposed regulations provide that the final regulations, to which these proposed regulations relate, will be effective for all documents mailed after the publication date of these proposed regulations.

Under section 7502(f)(3), the IRS may extend to a service provided by a private delivery service (PDS) a rule similar to the prima facie evidence of delivery rule applicable to registered and certified mail. To date the IRS has not received any comments or suggestions for extending this rule even though the IRS and the Treasury Department previously requested comments in a prior notice of proposed rulemaking under section 7502. *See* 64 FR 2606 (Jan. 15, 1999). As the IRS is clarifying what documentation it will accept as proof of delivery, it is appropriate to solicit comments on this issue again. Accordingly, the IRS and the Treasury Department encourage the public to make comments regarding whether the IRS and the Treasury Department should extend the prima facie evidence of delivery rule to a service provided by a PDS. These comments should address the reasons why the IRS should treat a service provided by a PDS as substantially equivalent to registered or certified mail, including a comparison of the benefits to taxpayers and the IRS of the PDS service with the benefits of registered and certified mail.

## Special Analyses

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It has also been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to the regulations.

It is hereby certified that the collection of information contained in this regulation will not have a significant economic impact on a substantial number of small entities. Accordingly, a regulatory flexibility analysis is not required. Although the collection of information in this notice of proposed rulemaking affects a substantial number of small entities, the economic impact on these small entities is not substantial. If a small entity uses registered or certified mail to file a document with the IRS, the additional burden (filling out the appropriate United States Postal Service forms) over and above using regular mail is not substantial. Furthermore, the extra cost to use registered or certified mail is not substantial as certified mail costs only $2.30 and registered mail can be used for as little as $7.50. Finally, the added burden of retaining the certified or registered mail sender's receipt will be minimal as the receipt can be associated with the small entity's copy of the document that it filed with the IRS.

Pursuant to section 7805(f), this notice of proposed rulemaking will be submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small businesses.

## Comments and Requests for Public Hearing

Before these proposed regulations are adopted as final regulations, consideration will be given to any written (a signed original and 8 copies) or electronic comments that are submitted timely to the IRS. The IRS and the Treasury Department request comments on the clarity of the proposed rules and how they can be made easier to understand. All comments will be available for public inspection and copying. A public hearing may be scheduled if requested in writing by any person that timely submits written comments. If a public hearing is scheduled, notice of the date, time, and place for the public hearing will be published in the **Federal Register**.

## Drafting Information

The principal author of the regulations is Charles A. Hall of the Office of the Associate Chief Counsel, Procedure and Administration (Administrative Provisions and Judicial Practice Division).

## List of Subjects in 26 CFR Part 301

Employment taxes, Estate taxes, Excise taxes, Income taxes, Penalties, Reporting and recordkeeping requirements.

## Proposed Amendments to the Regulations

Accordingly, 26 CFR part 301 is proposed to be amended as follows:

## PART 301—PROCEDURE AND ADMINISTRATION

**Paragraph 1.** The authority citation for part 301 continues to read in part as follows:

Authority: 26 U.S.C. 7805 * * *

**Par. 2.** Section 301.7502–1 is amended by:

1. Adding two new sentences at the end of paragraph (e)(1).

2. Adding paragraph (g)(4).

The additions read as follows:

### § 301.7502–1 Timely mailing of documents and payments treated as timely filing and paying.

\* \* \* \* \*

(e) * * * (1) * * * Other than direct proof of actual delivery, proof of proper use of registered or certified mail is the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

\* \* \* \* \*

(g) * * *

(4) *Registered or certified mail as the means to prove delivery of a document.* The last two sentences of paragraph (e)(1) of this section, when published as final regulations, will apply to all documents mailed after September 21, 2004.

Mark E. Matthews,
*Deputy Commissioner for Services and Enforcement.*
[FR Doc. 04–21218 Filed 9–20–04; 8:45 am]
**BILLING CODE 4830–01–P**

## DEPARTMENT OF HOMELAND SECURITY

### Coast Guard

### 33 CFR Part 117

[CGD08–04–018]

RIN 1625–AA09

### Drawbridge Operation Regulation; St. Croix River, Wisconsin, Minnesota

**AGENCY:** Coast Guard, DHS.
**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** The Coast Guard proposes to change the regulation governing the Prescott Highway Bridge, across the St. Croix River, Mile 0.3, at Prescott, Wisconsin. Under our proposed rule, the drawbridge need not open for river traffic and may remain in the closed-to-navigation position from November 1, 2005, to April 1, 2006. This proposed rule would allow the bridge owners to make necessary repairs to the bridge.
**DATES:** Comments and related material must reach the Coast Guard on or before October 21, 2004.
**ADDRESSES:** You may mail comments and related material to Commander, Eighth Coast Guard District, Bridge Branch, 1222 Spruce Street, St. Louis, MO 63103–2832. Commander (obr) maintains the public docket for this rulemaking. Comments and material received from the public, as well as documents indicated in this preamble as being available in the docket, will become part of this docket and will be available for inspection or copying at room 2.107f in the Robert A. Young Federal Building at Eighth Coast Guard District, between 8 a.m. and 4 p.m., Monday through Friday, except Federal holidays.
**FOR FURTHER INFORMATION CONTACT:** Mr. Roger K. Wiebusch, Bridge Administrator, (314) 539–3900, extension 2378.
**SUPPLEMENTARY INFORMATION:**

### Request for Comments

We encourage you to participate in this rulemaking by submitting comments and related material. If you do so, please include your name and address, identify the docket number for this rulemaking (CGD08–04–018), indicate the specific section of this document to which each comment applies, and give the reason for each comment. Please submit all comments and related material in an unbound format, no larger than 8½ by 11 inches, suitable for copying. If you would like to know they reached us, please enclose a stamped, self-addressed postcard or

Case 1:21-cv-00083-LCB-LPA   Document 14-1   Filed 06/03/21   Page 4 of 4