IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHEN K. POND, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:21CV83 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Stephen K. Pond initiated this action under Title 26 of the United States Code for the refund of income tax erroneously assessed against and collected from Plaintiff for the tax year ending December 31, 2013, (ECF No. 1 ¶ 1), and amended his complaint[1] on April 20, 2021, (ECF No. 8). Before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 10.) For the reasons stated below, Defendant's motion will be granted.

I. **BACKGROUND**

Plaintiff is an investor in Insect Shield, LLC, a North Carolina limited liability company that is taxed as a partnership. (ECF No. 8 ¶ 7.) In 2017, the IRS audited "Insect Shield's partnership return for the 2012 tax year," (*id.* ¶ 8), which resulted in the IRS issuing a Notice of Computational Adjustment, (*id.* ¶ 9). The notice indicated that Plaintiff owed a balance for the 2012 tax year, which Plaintiff subsequently paid with interest. (*Id.* ¶¶ 13–14.) After paying

---

[1] The First Amended Complaint is the operative complaint.

the balance owed, according to Plaintiff's Complaint, Plaintiff's accountants discovered that the IRS made a computational error and "prepared Form 1040X amended returns for 2012 and 2013 reporting the correct amount of taxable income." (*Id.* ¶ 15.) The corrected amount of income entitled Plaintiff to a refund for tax years 2012 and 2013. (*Id.* ¶¶ 17–18.)

The complaint alleges that, on July 18, 2017, Plaintiff's accountants mailed both amended returns via First Class mail "in a single envelope to the IRS service center in Holtsville, New York." (*Id.* ¶ 20.) According to Plaintiff, the envelope containing his returns "was postmarked with a date of July 18, 2017, and physically delivered to the IRS service center in Holtsville, New York." (*Id.* ¶ 21.) The same day, Plaintiff's accountant also prepared and mailed via First Class mail to the IRS office in Covington, Kentucky "a Form 843 Claim for Refund and Request for Abatement for the 2012 tax year," (the "Form 843"), to recoup the interest Plaintiff paid. (*Id.* ¶ 24.)

Plaintiff received a letter acknowledging receipt of the Form 843 from the IRS office in Andover, Massachusetts. (*Id.* ¶ 26.) In the letter, the IRS stated that it did not have a copy of Plaintiff's 2012 Form 1040X. (*Id.*) Plaintiff's accountant responded to the IRS's letter explaining that the Form 1040X for 2012 was sent to the Holtsville, New York service center via first class mail. (*Id.* ¶ 27.) Plaintiff's accountant further indicated that his belief was that "the Covington office would retrieve a copy of the Form 1040X from the Holtsville service center as needed to process the request," and attached a copy of the Form 1040X for 2012 to his letter. (*Id.*)

Because the IRS's letter did not reference Plaintiff's 2013 amended return, Plaintiff's accountant believed "that the 2013 amended return was being processed and that the

appropriate refund would issue in a timely manner." (*Id.* ¶ 28.)  However, "[i]n March 2018, Plaintiff received the claimed refund for the 2012 tax year but no refund for the 2013 tax year." (*Id.* ¶ 31.)  Plaintiff inquired about the status of the 2013 refund through counsel and learned that IRS agents were unable to locate the 2013 amended return in the IRS's system.  (*Id.* ¶ 32.) "As a result, on February 1, 2019, Plaintiff submitted a duplicate copy of the 2013 Form 1040X to the Holtsville office via certified mail," which was delivered on February 4, 2019.  (*Id.* ¶ 33.) However, the IRS still did not issue a refund.  (*Id.*)

Plaintiff was informed on July 25, 2019, that the IRS processed the copy of his 2013 amended return in March 2019.  (*Id.* ¶ 34.)  However, the IRS was unable to locate the agent working on Plaintiff's claim, and Plaintiff received no further correspondence regarding his 2013 claim.  (*Id.* ¶¶ 34–35.)  Plaintiff's counsel contacted the IRS again on September 20, 2019, and "discovered that his 2013 claim had been closed with no refund processed," and that IRS "[a]gents were again unable to locate a copy of Plaintiff's 2013 amended return anywhere on the IRS's system."  (*Id.* ¶ 36.)

At the direction of an IRS agent, Plaintiff "submitted a third copy of the 2013 Form 1040X via fax, directly to that agent."  (*Id.* ¶ 37.)  That IRS agent received a fax copy of the 2013 Form 1040X, assigned herself to Plaintiff's case, and "denied Plaintiff's claim of refund on October 1, 2019, on the grounds that the statute of limitations had run."  (*Id.* ¶ 38.)  The denial letter indicated that the "date of claims received" was July 17, 2017.  (*Id.* ¶ 39.)  Plaintiff attempted to appeal this denial; however, he was ultimately unsuccessful.  (*Id.* ¶¶ 40–44.)

Defendant brings this Motion to Dismiss Plaintiffs Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.  (ECF No.

3

10.) Defendant argues that this Court lacks the ability to address Plaintiff's claims, because Plaintiff cannot show that Defendant waived sovereign immunity since he failed to allege facts sufficient to establish that his 2013 Amended Return was duly filed prior to the applicable deadline. (ECF No. 11 at 7–17.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff, and the trial court may "consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Furthermore, when evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III. DISCUSSION

The United States, as a sovereign entity, is immune from lawsuits unless it consents to be sued. *United States v. Dalm*, 494 U.S. 596, 608 (1990). "When the United States consents to

4

be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). "A statute of limitations requiring that a suit against the government be brought within a certain time period constitutes a condition on the government's waiver of immunity." *Webb v. United States*, 66 F.3d 691, 693 (4th Cir. 1995). The "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957). The waiver is effective if it is "unequivocally expressed," and waiver should not be liberally construed. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33–34 (1992) ("[T]he traditional principle [is] that the Government's consent to be sued must be construed strictly in favor of the sovereign." (internal quotations omitted)). The plaintiff bears the burden of showing "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). "If the plaintiff fails to meet this burden, then the claims must be dismissed" for lack of subject matter jurisdiction. *Id.*

The United States waives sovereign immunity and grants the district courts original jurisdiction of "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). "However, the general jurisdictional grant in § 1346(a)(1) must be read to incorporate the requirements of 26 U.S.C. §§ 7422(a)" and 6511. *Webb*, 66 F.3d at 693; *see United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("The Internal Revenue Code specifies that before [a taxpayer can seek a refund of taxes erroneously or unlawfully assessed or collected in an action against the United States,] the taxpayer must comply with the tax

refund scheme established in the Code."). Section 7422(a) provides that the plaintiff must "duly file" a claim for refund or credit[2] with the Secretary of the Treasury before he can sue the United States. 26 U.S.C. § 7422(a). A refund is "duly filed" if it is filed within the statutory period. *Dalm*, 494 U.S. at 602 ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511[ ], a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' . . . may not be maintained in any court.") (internal citations omitted). The statutory period for "claims with respect to partnership items" are governed by "subsections (c) and (d) of section 6230." § 6511(g)[3]. Under § 6230, a claim for a refund must "be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." § 6230(c)(2)(A)[4].

Here, Defendant argues that Plaintiff cannot meet his burden of showing that the United States waived sovereign immunity, because Plaintiff did not file his 2013 Amended Return before the applicable statutory deadline. (ECF No. 11 at 9–17.) The notice of computational adjustment out of which Plaintiff alleges his claim for refund arises was mailed on April 26, 2017. (ECF No. 8-1 at 2.) Therefore, the applicable statutory deadline for Plaintiff to file his claim for refund was October 26, 2017, which is 6 months after the notice

---

[2] "A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return." 26 C.F.R. § 301.6402-3(a)(5).

[3] 26 U.S.C. § 6511(g) was repealed by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(f)(6), 129 Stat 584, 638 (2015). However, the repeal is only effective for partnership taxable years beginning after December 21, 2017. *See* § 1101(g)(1). Therefore, § 6511(g) was effective for all periods applicable to Plaintiff's suit.

[4] 26 U.S.C. § 6230 was likewise repealed, but also remains effective for all periods applicable to Plaintiff's suit. *See* Bipartisan Budget Act § 1101(a).

of computational adjustment was mailed. *See* § 6230(c)(2)(A). Thus, this Court must determine whether Plaintiff has met his burden of showing that he "duly filed" his 2013 Amended Return by October 26, 2017. If Plaintiff fails to meet this burden, this action must be dismissed.

### A. Overview of Filing Claim for Refund by Mail

Before 1954, the "physical delivery rule" governed whether tax documents were timely filed. Under this rule, tax documents were only considered timely filed if the documents were physically delivered to the IRS by the applicable deadline. *United States v. Lombardo*, 241 U.S. 73, 76 (1916). "This physical-delivery rule left taxpayers who mailed their documents vulnerable to the vagaries of the postal service; documents could be delayed or not delivered at all through no fault of the taxpayer. To mitigate the harshness of the physical-delivery rule, some courts responded by applying the common-law mailbox rule." *Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019). The common law mailbox rule permitted "proof of proper mailing—including by testimonial or circumstantial evidence—[to] give[ ] rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive." *Id.*

In 1954, Congress enacted 26 U.S.C. § 7502, which provided exceptions to the physical delivery rule. *See* An Act to Revise the Internal-Revenue Laws, Pub. L. No. 83-591, § 7502, 68A Stat. 3, 895–96 (1954). The current version of this section provides in relevant part:

> **(a)** **General Rule.**
>
> **(1) Date of delivery.** If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws

7

> is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.
>
> **(c) Registered and certified mailing; electronic filing.**
>
> **(1) Registered Mail.** For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail.
>
> **(A)** such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
>
> **(B)** the date of registration shall be deemed the postmark date.
>
> **(2) Certified mail; electronic filing.** The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(a), (c).

Since the enactment of the current version of § 7502, circuit courts have reached conflicting decisions regarding whether it supplants the common law mailbox rule. *See Sorrentino v. Internal Revenue Serv.*, 383 F.3d 1187, 1191 (10th Cir. 2004) (collecting cases and explaining the circuit split). The Second and Sixth Circuits held that § 7502 provides the only exceptions to the physical delivery rule. *See Deutsch v. Comm'r*, 599 F.2d 44, 46 (2d Cir. 1979); *Miller v. United States*, 784 F.2d 728, 731 (6th Cir. 1986). The Eighth and Tenth Circuits, on the other hand, found that § 7502 does not provide the sole exceptions to the physical delivery

8

rule and that the common law mailbox rule still applies. *See Estate of Wood v. Comm'r.*, 909 F.2d 1155, 1162 (8th Cir. 1990); *Sorrentino*, 383 F.3d 1187 at 1193. The Ninth Circuit initially held that § 7502 did not supplant the common law mailbox rule, *Anderson v. United States*, 966 F.2d 487, 490 (9th Cir. 1992); however, following the amendment of Treasury Regulation § 301.7502-1, the court held that § 7502 provides the sole exceptions to the physical delivery rule, *Baldwin*, 921 F.3d 836 at 843–844. The Fourth Circuit has yet to rule on this issue.

As a result of this circuit split, in August 2011, the Treasury Department amended Treasury Regulation § 301.7502-1(e) to interpret § 7502 as providing the only exceptions to the physical delivery rule. Section § 301.7502-1(e) provides in relevant part:

> In the case of a document (but not a payment) sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued, and that the envelope was properly addressed to the agency, officer, or office constitutes prima facie evidence that the document was delivered to the agency, officer, or office. Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS as provided for by paragraph (e)(2)(ii) of this section, *are the exclusive means to establish prima facie evidence of delivery of a document* to the agency, officer, or office with which the document is required to be filed. *No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.*

26 C.F.R. § 301.7502-1(e)(2)(i) (emphasis added).

Defendants argue that § 301.7502-1(e) supplanted the common law mailbox rule, and thus, Plaintiff can only establish proper filing through the exceptions in § 7502. Plaintiff, on the other hand, argues that the IRS interpretation of § 7502 is an impermissible construction of the statute and, therefore, he can use the common law mailbox rule to establish that he timely filed his 2013 Amended Return. Thus, the Court must determine whether deference should be given the IRS's interpretation of § 7502.

9

### B. IRS Interpretation of § 7502 is Entitled to *Chevron* Deference

In determining whether to defer to an agency's interpretation of a statute, a court must engage in the two-step analysis established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). First, the court must determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If Congress's intent is clear, then "that is the end of the matter," and the court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. However, if "Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute." *Id* at 843. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

The Ninth Circuit has analyzed Treasury Regulation § 301.7502-1(e)(2) under the two-step *Chevron* analysis and found that the IRS's interpretation of 26 U.S.C. § 7502 is entitled to *Chevron* deference. *See Baldwin*, 921 F.3d at 842–43. In addressing the first step in the analysis, the court concluded that 26 U.S.C. § 7502 is silent as to whether the statute supplants the common-law mailbox rule. *Id.* at 842. Specifically, "the statute does not address whether a taxpayer who sends a document by regular mail can rely on the common-law mailbox rule to establish a presumption of delivery when the IRS claims not to have received the document." *Id.* Rather, the statute only permits "a presumption of delivery when a taxpayer sends a document by *registered* [or certified] mail, 26 U.S.C. § 7502(c)(1)(A), and it authorizes the creation of similar rules for certified mail, electronic filing, and private delivery services." *Id.* (citing § 7502(c)(2), (f)(3)).

The court then proceeded to step two of the analysis and found that "Treasury Regulation § 301.7502-1(e)(2) is based on a permissible construction of the statute." *Id.* at 842–43. The Ninth Circuit stated the following in support of its holding:

> As reflected by the circuit split that developed on this issue, Congress' enactment of IRC § 7502 could reasonably be construed in one of two ways: as intended merely to supplement the common-law mailbox rule, or to supplant it altogether. The Treasury Department chose the latter construction by interpreting IRC § 7502 to provide the sole means by which taxpayers may prove timely delivery in the absence of direct proof of actual delivery. That construction of the statute is reasonable in light of the principle that "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496, 133 S.Ct. 1943, 186 L.Ed.2d 43 (2013) (alteration omitted); *see also Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017). Given that the purpose of enacting IRC § 7502 was to provide exceptions to the physical-delivery rule, it is reasonable to conclude that "Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000).

*Id.* at 843. Other federal courts have adopted the Ninth Circuits holding. *See e.g., Taha ex rel. his deceased brother v. United States*, 148 Fed. Cl. 37, 43–44 (2020), *aff'd sub nom. Taha v. United States*, 28 F.4th 233 (Fed. Cir. 2022); *see also Crispino v. Internal Revenue Serv.*, No. CV 17-13751, 2021 WL 3910000, at *6 (D.N.J. July 26, 2021) (collecting cases).

The Court finds the Ninth Circuits analysis persuasive and likewise concludes that (1) 26 U.S.C. § 7502 is silent as to whether the statute supplants the common-law mailbox rule, and (2) Treasury Regulation § 301.7502-1(e)(2) is based on a permissible construction of 26 U.S.C. § 7502. Thus, the only exceptions to the physical delivery rule are those provided in 26 U.S.C. § 7502, and therefore Plaintiff can only prove timely filing through actual physical delivery or proof of mailing by certified or registered mail.

Here, Plaintiff's complaint alleges that his accountant sent his 2013 Amended Return by First class mail and not by certified or registered mail. (*See* ECF No. 8 ¶ 20.) Thus, the exceptions in § 7502 do not apply to his filings and Plaintiff does not get the benefit of any presumption of timely filing. Plaintiff, therefore, can only establish timely filing by showing that his 2013 Amended Return was actually delivered to the IRS.

### C. Plaintiff is Unable to Show Actual Physical Delivery

Under the physical delivery rule tax documents are only considered timely filed if the documents were physically delivered to the IRS by the applicable deadline. *Lombardo*, 241 U.S. at 76 ("A paper is filed when it is delivered to the proper official and by him received and filed.") "Delivery for these purposes is synonymous with receipt of the item." *Deutsch*, 599 F.2d at 46. Thus, a plaintiff cannot establish actual physical delivery where the IRS has no record of receiving the return. *See Wiggins v. United States*, No. CIV. HM85-1591, 1986 WL 15574, at *2 (D. Md. Dec. 29, 1986) (finding that the plaintiffs did not establish actual delivery where they "did not mail their . . . return by registered mail, and the IRS ha[d] no record of receipt."); *see also Buttke v. United States*, 13 Cl. Ct. 191, 192 (1987); *Miller*, 784 F.2d at 730.

In order for this Court to have jurisdiction in this case, Plaintiff must allege facts to demonstrate that his claim of refund, which is his 2013 amended 1040X return, was actually physically delivered to IRS prior to the deadline which the parties agree was October 26, 2017. (*See* ECF Nos. 8 ¶ 22; 11 at 2; 14 at 7.) Defendants argue that even taking as true the factual allegations in Plaintiff's Amended Complaint as it must do on a facial challenge to jurisdiction[5],

---

[5] While the court must take the factual allegations as true at this stage, "mere conclusory or speculative allegations are insufficient" to withstand a motion to dismiss, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences,

Pond fails to allege facts to support an unequivocal waiver of sovereign immunity by the United States and therefore this Court lacks jurisdiction. This Court agrees.

Here, there does not appear to be a dispute related to the facts involving the narrow issue that the Court is being called upon to answer. Plaintiff specifically alleges that he submitted his claim for refund to the IRS when his accountant mailed his 2013 Amended Return via First Class mail "to the IRS service center in Holtsville, New York." (ECF No. 8 ¶ 20.) Plaintiff also alleges that the IRS informed Plaintiff that they were unable to locate his 2013 Amended Return anywhere in the IRS system. (*Id.* ¶ 32.) Since Plaintiff nor his accountant mailed the 2013 amended return by certified or registered mail, he is not entitled to any presumption of receipt and therefore has not alleged a prima facie showing of receipt by the IRS of the claim under § 7502(c). Further, Plaintiff cannot show actual physical delivery or receipt by the IRS, since, according to the Complaint, the IRS has no record of receiving the return.

Nor does Plaintiff's argument that the "date of claims received" in the denial letter from IRS listed as July 17, 2017 "create[ ] a plausible inference that Pond's amended returns were delivered to IRS prior to the statutory deadline" of October 26, 2017. (ECF No. 14 at 10–11). To make such inference the Court would have to ignore the express language of § 7502(a)(1), which provides that the date of delivery for a return actually delivered by United States mail to the IRS is "the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed." § 7502(a)(1).

---

unreasonable conclusions, or argument." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F. 3d. 527, 548 (4th Cir. 2013).

13

Case 1:21-cv-00083-LCB-LPA   Document 16   Filed 04/13/22   Page 13 of 15

Moreover, based on Plaintiff's allegations in the Complaint, this Court would have to accept the implausible inference that the IRS could have received the 2013 Amended Return a day before Plaintiff's accountant ever mailed it. Such argument is in direct conflict with Plaintiff's allegations concerning when the return was mailed. (*Compare* ECF No. 8 ¶¶ 19–21, *with id.* ¶ 39.)

Finally, though Plaintiff alleges that he sent additional copies of the return to the IRS after the deadline in an effort to show that the IRS may have carelessly lost or destroyed his return; or that, based on the actions of the IRS, it was reasonable for Plaintiff to believe that the IRS had received the 2013 return and was processing it; such allegations are not relevant to the Court's relatively limited and narrow issue here. In *Hull v. United States*, 146 F.3d. 235, 238 (4th Cir. 1998), the Fourth Circuit recognized the limited scope and technical nature of the Court's consideration in evaluating whether the United States has waived sovereign immunity based a statute of limitations as follows:

> When courts interpret a statute of limitations for suits against the government, the statute must receive a strict construction in favor of the Government. . . . Moreover, in tax cases and particularly in those involving the construction of limitations statutes, equitable considerations are of limited consequence. Rather, the task of the court in such cases is not that of weighing equities, but of determining technical application of the law consistent with the well-established view that tax laws are technical and, for the most part, are to be accordingly interpreted. We have observed that a ruling that a refund claim is filed too late can be a harsh one. But we are not authorized to provide relief from the clear statutory requirements. The United States consents to be sued for tax refunds only when the refund claim is filed in accordance with the Internal Revenue Code.

*Id.* at 238 (internal quotations and citations omitted).

Consequently, this Court concludes that Plaintiff is unable to show timely filing through actual delivery of his 2013 amended return. Therefore, this Court lacks jurisdiction of this case, and the action must be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 10), is **GRANTED**.

This the 13th day of April 2022.

/s/ Loretta C. Biggs
United States District Judge